UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CASSIDIAN COMMUNICATIONS, INC., | § § § | |
| Plaintiff, | § § | CAUSE NO. 2:12-CV-162-JRG |
| V. | § § | |
| MICRODATA GIS, INC., | § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' claim construction briefing. The Court held the *Markman* hearing on June 4, 2013. This Order addresses the parties' various claim construction disputes related to the sole patent-in-suit, U.S. Patent No. 6,744,858 (the "'858 patent"). This Order will first briefly address the patent-in-suit and then turn to the merits of the claim construction issues.[1]

**I.     BACKGROUND AND THE PATENT-IN-SUIT**

On March 26, 2012, Cassidian Communications, Inc. ("Plaintiff") brought suit against MicroDATA GIS, Inc. and MicroDATA, LLC and then subsequently added TeleCommunications Systems, Inc. to the suit (collectively, "Defendants"), alleging infringement of the '858 patent. In general, the '858 patent relates to a system for providing routing calls, such as emergency calls, through a distributed network of systems for handling those calls, such as one or more Public Safety Answering Points ("PSAP"). '858 patent at 3:46-4:19. The '858 patent was filed on January 25, 2002, claims priority to a provisional application

---

[1] This Court previously issued a claim construction order on ten terms in the '858 patent and the parties there also agreed to four additional terms. *Plant Equipment, Inc. v. Intrado, Inc.*, Civil Action No. 2:09-CV-0395-RJG (April 27, 2012).

filed on January 26, 2001, issued on June 1, 2004 and then was subject to an *ex parte* reexamination certificate that issued on December 2, 2008. The claims at issue are those present in the reexamination certificate. The '858 patent lists two inventors, namely, Terry S. Ryan and Randel W. Henry.

The '858 patent generally describes routing of emergency services communications to call centers. In one example, a call initiated by a caller is received by a central data manager, which routes the call to a particular call center via a Wide Area Network based on Automatic Number Information ("ANI") and/or Automatic Location Information ("ALI"). '858 patent at 2:46-50. Much of the dispute in this case arises from interpreting terminology used in the '858 patent claims regarding how calls are routed and what information is used to route those calls.

## II.   LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One

purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claim when the claims language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the

field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the best guide for construing the claims. *Id.* at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may

lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The en banc court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification has in general the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112 ¶ 6.

*B. Braun Med., Inc. v. Abbott Labs*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112 ¶ 6 "mandates that such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (quoting 35 U.S.C. § 112 ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

### III. CONSTRUCTION OF AGREED TERMS

The parties agreed to the following claim constructions:

| Claim Term | Agreed Construction |
|---|---|
| Multiple | Consisting, including, or involving more than one |
| Automated/Automatic Number Information | The telephone number of the telephone used by the calling party |

### IV. CONSTRUCTION OF DISPUTED TERMS

#### A. Call Center(s)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively, the organizational unit of a business/office that receives incoming calls and may provide services. | One or more Public Safety Answering Point(s) or PSAP(s). |

#### 1. The Parties' Positions

Both parties agree that the term "call center" is used in the specification in a broad sense. However, Defendants urge limiting the term "call center" to "one or more PSAP(s)" because the term "call center" was added to claim 1 during the reexamination of the '858 patent. Defendants argue that this limitation is appropriate because claim 1 as originally issued did not recite a "call

center" at all, but instead only referred to a PSAP. When claim 1 was initially rejected in reexamination, the patentee amended claim 1 to recite that the plurality of remote terminals were "each associated with one of a plurality of call centers." '858 patent Reexamination Certificate at 1:30-32. Defendants argue that a patentee is not permitted to expand the scope of a claim in reexamination and thus, the term "call center" must be limited to a PSAP, as recited in claim 1. Otherwise, they argue, the claim would cover routing to any type of call center and not just a PSAP, as claim 1 originally read. Defendants also argue that since claim 1 states that the call center is associated with the remote terminals and also states that the PSAP is associated with the remote terminals, then the call center and the PSAP must be the same thing.

Additionally, Defendants point to the '858 patent specification's description of call centers as "PSAP call centers." Essentially, Defendants argue that a PSAP is the only call center described in the specification to handle emergency calls. Since the patentee chose to limit the claims to processing and routing of emergency calls, they argue that the call center, in the context of the claims, should be limited to the PSAP disclosure in the '858 patent specification.

On the contrary, Plaintiff contends that "call center" does not require construction. Plaintiff believes this term has a common understanding that a jury can readily understand. However, if the Court finds that a construction is required, Plaintiff points to the background that explains that a call center is a "specific unit of a business organization to which the call is forwarded." '858 patent at 1:34-35.

Plaintiff also argues that the reexamination history does not limit a call center to a PSAP, and that the amendment to claim 1 does not result in a broader claim. Rather, it argues that the amended claim language uses both a call center and a PSAP, indicating that they must have different meanings – not the same meaning as Defendants suggest. Finally, Plaintiff argues that

7

the claims' recitation of emergency services does not require limiting the claim to a PSAP. Rather, a PSAP is only offered as an example of a call center that can service emergency calls.

### 2. Discussion

Plaintiff is correct that the reexamination file history does not support limiting "call center" to a "PSAP." The reexamined claim 1 uses those terms separately, indicating an intention that the terms mean different things. Contrary to Defendants' position, as a matter of logic, it is possible to have a call center associated with a remote terminal and the remote terminal being serviced by a PSAP without the PSAP and the call center being the same thing. In other words, each remote terminal could be associated with a call center and served by a separate PSAP. The file history never defines a call center as a PSAP, nor does it limit the scope of the term "call center" in such a way. When the term "call center" was added to the reexamined claim, it did not expand the scope of the claims to give rise to a recapture. Instead, the addition narrowed the claims to require a call center and a PSAP, whereas previously, claim 1 only required a PSAP.

The specification also does not limit a call center to a PSAP. Neither party disputes that a PSAP can be an example of a call center; however, the Federal Circuit is clear that limitations from the specification must not be read into the claims absent a clear disavowal of claim scope. *See Phillips*, 415 F.3d at 1316. The Court is not persuaded that such an intentional disclaimer exists in the '858 patent.

The Court must then determine whether to instruct the jury that the term should be given its plain and ordinary meaning or to provide some other explanation. In this case, the Court finds that additional context and explanation for this term is likely to assist the jury in evaluating the issues in this case. The language in the '858 patent specification describes a call center in the context of the invention.

Accordingly, the Court finds that the term "call center/call centers" is **"the organizational unit(s) of a business/office that receives incoming calls and may provide services."**

### B. Automatic Location Information

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br>Alternatively, geographic position of a caller's communication device. | The name and address of the telephone used by the calling party, along with information about emergency services agencies that serve that address. |

#### 1. The Parties' Positions

The parties have two specific disputes: (1) whether this term requires the name and address of the telephone or just a geographic position, and (2) whether information about the emergency services agencies that serve the address is also required.

Plaintiff argues that the three words that form the phrase "Automated Location Information" or "ALI" are easy to understand and no construction is necessary. Plaintiff also asserts that examples in the specification indicate that ALI is any geographic information about the caller.

Defendants argue that the specification specifically defines ALI to include the name and address, as well as emergency agency information. Defendants cite to the '858 patent specification at 1:49-52, where it states:

> ALI information includes the name, address, and other pertinent information (e.g., agencies that serve that address, such as police, fire department, ambulance) about the calling party.

However, Defendants further limit the passage above to require ALI to include "information about emergency services agencies that serve that address." To support that limitation, Defendants point to the Court's prior claim construction opinion in *Plant Equipment,*

9

*Inc. v. Intrado, Inc.* Defendants contend that in the *Plant Equipment* opinion, the Court recognized that ALI includes the information about emergency services agencies that serve the address.

In response, Plaintiff argues that the specification passage cited defines what ALI information may contain – not what ALI *must* contain. Plaintiff attempts to draw a distinction between the phrase "ALI information" and "ALI." While Plaintiff agrees that "ALI information" includes the name, address and other pertinent information, as defined in the '858 patent specification at 1:49-52, it contends that "ALI" used alone is a broader term that only refers to geographic information generally.

### 2. Discussion

As a threshold matter, the Court agrees that the capitalization of a term like "Automatic Location Information" indicates to the reader that the patentee intended for it to have a special meaning in the context of the '858 patent. Generally, the capitalization of a term makes it a proper name (e.g., "President Obama" as compared to "a president") or otherwise attributes a particular definition to the term. Here, the capitalization of "Automatic Location Information" demonstrates that it must mean something more than mere automatic location information. Therefore, the Court finds that some clarification beyond the plain and ordinary meaning is necessary to understand this term.

Turning to the proposed constructions, Defendants appear to start with the language from the specification, but then made it limiting. In the specification, ALI is defined as *including* various pieces of information – not *requiring* all of those pieces of information. '858 patent at 1:49-53. The specification further describes agencies that serve that address, such as police, fire department, ambulance as an example of "other pertinent information" that can be included in the ALI definition. Such information is not required. Accordingly, the Court does not find that

10

information about emergency services agencies that serve that address should be a limiting component of ALI.

On the other hand, the Court does not find ALI to be so broad as the general geographic position of a caller's communication device. The Court does not find the distinction between "ALI" and "ALI information" to be persuasive. Instead, the Court believes that the patentee was using the term "information" after "ALI" colloquially, merely to clarify that ALI is a type of information. This is akin to the use in common parlance of "an ATM" and "an ATM machine" to mean the same thing; even though "ATM machine" could be read in a hyper-technical sense to be "automatic teller machine machine." Thus, the Court finds that column 1, lines 49-52 is definitional, indicating the patentee's intention to define ALI.

The Court will, however, rephrase this portion of the specification to make it more readily understandable.

In conclusion, the Court construes the term "Automatic Location Information" to mean **"information about the calling party which includes the name, address and other information related to the location of the calling party (e.g., agencies that serve that address, such as police, fire department, and ambulance)."**

### C.     Each Of

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. | Every one of individually (of) |

#### 1.     The Parties' Positions

Defendants argue for a proposed construction for this term but do not provide much by way of explanation as to why "each of" is confusing or needs construction. Even when asked at

the *Markman* hearing, Defendants were unable to explain why the term "each of" needs to be construed.

In their brief, Defendants argue that the term should be construed with its English dictionary definition so "the jury is able to make a determination on the infringement allegations and invalidity defenses." They do not say why their proposed definition is more helpful than the words themselves. Moreover, Defendants do not explain why the Court should resort to a dictionary definition rather than find clarification within the intrinsic record first.

When asked for its opinion, Plaintiff responds that the definition makes the claims more confusing than the words "each of" used in the claims as they are currently written.

### 2. Discussion

Where, as here, the party pursuing a construction is not able to explain to the Court why a claim interpretation matters or what the true dispute is, the Court typically declines to offer a construction that goes beyond the plain and ordinary meaning.

Accordingly, the Court construes the term "each of" to be given its plain and ordinary meaning.

### D. Data Associated With Said Incoming Call (Claim 3)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br>Alternatively, information associated with the incoming call. | ANI and ALI data associated with the incoming call. |

### 1. The Parties' Positions

The parties dispute whether the phrase "data associated with the incoming call" should be limited to "ANI and ALI data." Plaintiff argues the limitation to ANI and ALI data is improper

because whereas claim 1 of the '858 patent specifically recites ANI and ALI, the patentee chose to use a more general phrase in claim 3. Thus, Plaintiff contends that Defendants' proposed construction is an effort to improperly limit claim 3 in the same manner as claim 1. While the specification provides ANI and ALI as examples of data associated with the incoming call, Plaintiff argues that the claims should not be so limited absent a clear disavowal of claim scope. Moreover, Plaintiff points out that the specification describes ANI/ALI as being used for routing, as well as ANI and/or ALI. '858 patent, at 2:49. Thus, according to Plaintiff, Defendants' proposed construction that limits data to only ANI <u>and</u> ALI would effectively exclude other embodiments of the specification (*e.g.*, where only ANI or only ALI is used for routing).

In response, Defendants argue that the only embodiment in the specification requires use of ANI and ALI as the data associated with the incoming call used for selecting a call center. They argue that the reference to ANI and/or ALI in the specification refers to an analysis of the call and not to the information that is used for routing. Consequently, the only disclosure in the specification of information used for routing calls is ANI and ALI. Defendants contend that if there is some information related to the incoming call other than ANI together with ALI for routing calls, the patentee failed to disclose it. Defendants also cite to arguments Plaintiff made in the reexamination proceedings that they claim indicate that Plaintiff, when it was challenging the '858 patent in reexamination, equated data related to an incoming call with ANI and ALI.

### 2. Discussion

Defendant seeks the Court to import a limitation from the specification into the claim language because the only example described in the specification contains such a limitation. However, without more compelling evidence from the intrinsic record, the Court does not find such a use of embodiments in the specification amounts to a clear disavowal of a broader claim scope. Indeed, the specification clearly states "the network 12 may analyze the automatic

13

number information (ANI) <u>and/or</u> automatic location information (ALI) associated with the call." '858 patent, at 2:48-50 (emphasis added). Therefore, the patentee clearly contemplated the possibility of just one of ANI or ALI as well as both.

In addition, the Court finds that when the patentee wanted to specifically claim ANI <u>and</u> ALI, it did so in claim 1 and not in claim 3. Moreover, claim 4, which depends from claim 3, specifically recites that the data associated with the incoming call includes "both Automatic Number Information and Automatic Location Information data." If Defendants' proposed construction is adopted, that clause of claim 4 will be rendered superfluous. Defendants' reliance on the reexamination record is similarly misplaced because in Plaintiff's reexamination submissions, Plaintiff indicated that the data related to an incoming call *could* be ANI and ALI, but did not indicate that it must be ANI and ALI.

As for Plaintiff's alternative construction, it is far from clear to the Court that replacing the term "data" with "information" is more helpful to the jury.

In conclusion, the Court construes the term "data associated with said incoming call" to be given its plain and ordinary meaning.

### E.   Data Associated With the Related Call Center (Claim 3)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively, information associated with the related call center. | Data associated with the related call center, which is different from data used for routing. |

### 1. The Parties' Positions

Here, the primary dispute is whether the "data associated with the call center" must be "different from data used for routing" as proposed by Defendants. Plaintiff argues that such a distinction imparts an improper negative limitation that is inconsistent with the rest of claim 3. Plaintiff further argues that such a limitation is unsupported by the patent specification. Plaintiff also notes that claim 3 only requires "data associated with the call center" and does not mention data used for routing, so the distinction is unnecessary.

Defendants argue that their proposed construction simply clarifies that the claim requires two different types of data – (1) data associated with the related call center and (2) data used for routing. Defendants argue that the limitation in their proposed construction is not a negative limitation because it merely attempts to define what constitutes data associated with the related call center. Defendants assert that their proposed construction places no limitation on what other data is stored in the database. Further, Defendants argue that their construction is dictated by the structure of claim 3 as amended in reexamination. Specifically, Defendants contend that claim 3 recites three distinct steps of (1) "selecting a call center from said plurality of call centers for said incoming call depending on said data associated with said incoming call"; (2) "accessing data from a partitioned portion of a database that contains *data associated with the related call center*"; and (3) "routing the incoming call from said central data manager to said selected call center." (Emphasis added.) The call routed to a "selected call center" in step three refers back to the selecting step in step one. Thus, Defendants argue that the routing is effectively performed based on the data associated with the incoming call, which is distinct from the step in which the data associated with the related call center is accessed. In the final analysis, Defendants assert that they merely want to clarify that those two terms must refer to different types of data.

15

Plaintiff responds that even if the routing step refers back to the data associated with an incoming call, that in no way requires that the "data associated with an incoming call" must be defined to be separate from the "data associated with the related call center."

### 2. Discussion

Whether Defendants' proposed construction is viewed as a negative limitation or not, the construction must find support within the intrinsic evidence to be proper. The Court does not find any such support. Defendants' only argument (based on the intrinsic record) is that the claims specify that the data associated with the call center must be different from the data used for routing. Yet, claim 3 describes data associated with an incoming call and data associated with the related call center. Even if claim 3 indicates that routing is performed based on the data associated with an incoming call, there is nothing in claim 3 that would exclude an overlap between data associated with an incoming call and data associated with the related call center. Accordingly, the plain reading of claim 3 would permit use of the data associated with the related call center as part of the routing process.

As for Plaintiff's alternative construction, again, it is far from clear to the Court that replacing the term "data" with "information" is more helpful to the jury.

In conclusion, the Court construes the term "data associated with the related call center" to be given its plain and ordinary meaning.

## V. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted

by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby ORDERED, in good faith, to mediate this case with David Folsom, the mediator appointed in this case.  As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation.  Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So ORDERED and SIGNED this 19th day of June, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE