IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CASSIDIAN COMMUNICATIONS, INC. §<br>§<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>MICRODATA GIS, INC. MICRODATA, §<br>LLC, and TELECOMMUNICATION §<br>SYSTEM, INC. §<br>§<br>Defendants. § | Civil Action No. 2:12-cv-00162-JRG |

**MEMORANDUM AND OPINION**

Before the Court is Defendants microDATA GIS, Inc. ("microDATA") and Telecommunication System, Inc.'s ("TCS") (collectively, "Defendants") Motion for Summary Judgment of Non-infringement of U.S. Patent No. 6,744,858. (Dkt. No. 91.)  The Court heard arguments on the motion during the pretrial hearing held on December 2, 2013.  Having considered the parties' submissions and arguments, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion.

**I.    BACKGROUND**

Plaintiff Cassidian Communications, Inc. ("Cassidian") filed the above-styled action against Defendants on March 26, 2012, alleging that Defendants infringed claims 1, 3-8 and 12-14 of the U.S. Patent No. 6,744,858 (the '858 Patent).  Specifically, Plaintiff identifies microDATA's X-Solution™ system and TCS's Gemini system as the accused infringing instrumentalities.

The '858 Patent was first issued in June, 2004.  It then went through an *Ex Parte*

1

Reexamination with the Reexamination Certificate issued in December, 2008. Among the asserted claims, claims 1 and 3 are independent claims and the remaining claims are dependent claims. By the present motion, Defendants move for summary judgment that the accused infringing system and software do not infringe any of the asserted claims of the '858 Patent.

## II.     LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering motions for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255; *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

A finding of infringement in patent cases requires that the accused infringing products or systems meet every limitation of an asserted claim. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998). "An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied." *Id.*

## III.    ANALYSIS

Defendants present four separate grounds upon which summary judgment of non-infringement should be granted. First, Defendants assert that the accused instrumentalities

do not serve both a plurality of call centers and a plurality of Public Safety Answering Points ("PSAP"), as required by claims 1 and 3. Second, Defendants argue that the accused instrumentalities do not include or provide a partitioned database as required by claims 1 and 3. Third, Defendants argue that the accused systems do not perform the "presenting" step of claim 3, either directly or indirectly. Fourth, Defendants contend that the accused instrumentalities do not infringe claim 1 because not each and every incoming call handled by the accused systems is associated with an Automatic Number Information ("ANI") and an Automatic Location Information ("ALI"). The Court addresses each in turn.

### a. Whether the Accused Systems Serve Both Call Centers and PSAPs

Independent claim 1 of the '858 Patent claims an emergency services communication system. Independent claim 3 claims a method for handling incoming emergency services calls. Claims 1 and 3 both describe a "call center" and a "Public Safety Answering Point" in the body of the claim. The Court previously construed "call center" to mean "the organizational unit(s) of a business/office that receives incoming calls and may provide services." *See* Dkt. No. 71 at 9. In so construing, the Court rejected Defendants' proposed construction that "call center" should be limited to PSAPs.

Here, Defendants argue that claims 1 and 3 require both call centers and PSAPs, which are two separate and distinct elements. Given that Plaintiff's infringement contention only identifies PSAP as "call centers," Defendants contend that summary judgment of non-infringement should be granted because there is no evidence of a separate and distinct "call center" existing in the accused systems.

3

Plaintiff does not dispute that the only "call center" identified in its infringement contention is a PSAP. Rather, Plaintiff disputes that "call centers" and PSAPs must be separate and distinct elements. Specifically, Plaintiff argues that a PSAP can be a call center.

While Defendants correctly recite the Court's previous ruling that claims 1 and 3 require both a call center and a PSAP, the Court did not require call centers and PSAPs to be separate and distinct elements. Indeed, the Court recognized that "a PSAP can be an example of a call center." *See* Dkt. No. 71 at 8. Thus, given that Plaintiff has identified a PSAP as a call center in its infringement contention, summary judgment of non-infringement is not proper because a reasonable jury could find that the identified PSAP constitutes an example of a "call center" and thus satisfies such required element of claims 1 and 3. Accordingly, the Court **DENIES** Defendants' motion for summary judgment of non-infringement on the ground that the accused systems do not serve both call centers and PSAPs.

### b. Whether the Accused Systems Include a Partitioned Database

Defendants next argue that the accused TCS Gemini system does not infringe claim 3 because it does not include a partitioned database as required by the claim. Defendants further argue that microDATA's X-Solution Software does not infringe claim 1 or claim 3 because the software likewise does not provide a partitioned database.

Both claims 1 and 3 require "a server having *a database that is partitioned*." The Court has not construed the term "a database that is partitioned" in the instant case. It, however, construed the term previously in *Plant v. Intrado*, No. 2:09-cv-00395-JRG (E.D. Tex. April 27, 2012) to be "an organization of call center data in computer data storage together with database management software running on the server, wherein the call center data is organized and made

4

accessible such that the data of an individual call center is accessed without accessing the data of any other call center sharing the server." Both parties have adopted such construction in their summary judgment briefings. *See* Dkt. No. 91 at 10; Dkt. No. 104 at 13.

Defendants argue that the accused systems do not include a partitioned database because the database in Defendants' systems does not provide the capability to access the data of an individual call center without accessing the data of any other call center sharing the same server. Specifically, Defendants allege that the TCS Gemini runtime software has access to all data for all PSAPs for each incoming call. Similarly, Defendants allege that the microDATA X-Solution software provides any user associated with a primary PSAP the capability to access the data of any other PSAPs served by the same deployment.

In response, Plaintiff provides its infringement expert Dr. Tim A. Williams' opinion, which includes an analysis of TCS's Gemini system's provisioning database and microDATA's X-Solution system's xStore database. Dr. Williams' analysis reveals that TCS's provisioning database identifies a particular call center with a uniquely-valued primary key ("ResponderNum"), and users are assigned permission associated with the primary key and/or other keys granting access to only certain areas of data. Further, Dr. Williams opines that users of microDATA's databases are each associated with a globally unique identifiers ("GUID"), which is further associated with different settings allowing access to only certain information.

Having considered the purported evidence from both parties and "draw[n] all reasonable inferences in favor of the non-moving party," *Anderson*, 477 U.S. at 255, the Court finds that a genuine dispute of material fact exists as to whether the databases in the accused systems are so organized that "the data of an individual call center is accessed without accessing the data of any

other call center sharing the server." As such, the Court deems it improper to summarily decide that the accused systems do not include partitioned databases, and instead finds such issue a proper question of fact for the jury. Accordingly, the Court hereby **DENIES** Defendants' motion for summary judgment on the ground that the accused systems do not include partitioned databases.

### c. Whether Defendants Directly Perform the "Presenting" Step of Claim 3

Independent claim 3 is directed at a method for "handling incoming emergency services calls," wherein the first step is "presenting an incoming emergency call from a remote caller to a central data manager…" Defendants argue that the accused infringing systems do not perform this "presenting" step of claim 3 because incoming emergency calls are presented to the central data manager through service providers outside the accused systems. Plaintiff, on the other hand, argues that incoming emergency calls can be presented to the call center via equipment located within the call center itself. Plaintiff further argues that "presenting" a call simply means receiving a call within the actual structure of the accused systems.

The Court notes that Plaintiff's argument that "presenting" a call simply means receiving a call defies logic to at least some degree. The plain meanings of "presenting" and "receiving" are more akin to "making" a call as opposed to "answering" a call, but in any event while they may be related, they are not synonymous. The claim at issue explicitly requires "*presenting* an incoming emergency call…to a central data manger." While receiving an incoming call is not itself "presenting" a call, a call cannot logically be received unless it is presented. The key distinction is that proof that Defendants received the calls is not proof that Defendants directly initiated or made the calls. This is where Plaintiff's argument falls short.

6

The parties do not appear to dispute that incoming emergency calls to the accused systems initiate from outside communication service providers, such as a telephone network or cellular carrier. Rather, the parties' dispute centers upon the proper construction of the term "presenting." Defendants argue that presenting an incoming call to a central data manager requires the use of equipment or actors outside the central data manager. Plaintiff, however, contends that the call can be presented to the call center via equipment located within the call center, for example, a router. Having not previously construed "presenting," the Court deems it necessary to ascertain a proper meaning for this term given the parties' sharply divergent interpretations. In doing so, the Court incorporates by reference all the applicable legal standards set forth in the Court's claim construction order, issued on June 20, 2013 (Dkt. No. 71).

The intrinsic evidence supports Defendants' proposed construction, i.e., presenting a call to the central data manager requires the use of equipment or actors outside the central data manager. As demonstrated in Fig. 2 of the '858 Patent, a 911 Tandem office or local telephone switch located outside the central data manager first receives an emergency call. '858 Patent at Col 3:67- Col 4:1; Fig. 2. It then passes the call along with the information associated with the call on to the central data manager. '858 Patent at Col. 4:13-17. Similarly, in an alternative embodiment as depicted in Fig. 4, the Tandom office is replaced with an SS7 network, again located outside the central data manager. '858 Patent at Col. 8:4-6. All of the emergency calls are routed from the SS7 network to the central data manager. Thus, the specification of the '858 Patent demonstrates that incoming emergency calls are passed on or routed to the central data manager by outside equipment or actors, for example, by a Tandom office or an SS7 network. Put differently, it is the equipment outside the central data manager, such as a Tandom office or a SS7

network, that "presents" the incoming emergency calls to the central data manager. Defendants' proposed construction is therefore consistent with the intrinsic evidence.

Plaintiff, on the other hand, bases its proposed construction on a single sentence in the specification which states that "[w]hen the call is presented to a particular call center through a router at the call center, the call will ring on a virtual phone or physical VoIP telephone set." '858 Patent at Col. 4:59-61. Plaintiff argues that because a call can be "presented" to a call center through a router within the call center, then a call can necessarily be presented to a central data manager through equipment or actors inside the central data manager. The Court disagrees. First off, the cited sentence describes presenting a call to a "call center," not to a "central data manager" as required by claim 3. Nothing in the intrinsic evidence suggests that presenting a call to a central data manager is equivalent to presenting a call to a call center. Indeed, the evidence shows that presenting a call to a central data manager and presenting such to a call center are two separate and distinct steps of the claimed method. For instance, claim 3 requires first to "present[] an incoming emergency call…to *a central data manager*…." After the central data manager accesses certain data associated with the incoming call and selects an appropriate call center, it then "rout[es] the incoming call…to said selected *call center*…" Thus, that a router may route or present an incoming call dispatched from the central data manager to the selected call center says nothing about how an incoming emergency call is originally presented to the central data manager. Plaintiff's reliance on the cited sentence above is thus misplaced. Accordingly, the Court adopts Defendants' proposed construction of "presenting," i.e., presenting a call to the central data manager requires the use of equipment or actors outside the central data manager.

8

Next, Plaintiff argues that the "central data manager" of claim 3 is nothing more than an internal server with database in the accused systems, and the accused systems perform the "presenting" step by having an internal gateway component present the call to the internal server. Plaintiff's argument, however, is at odds with its own expert's opinion. Dr. Williams equated a Network Control Center (NCC) and a Call Logic Center (CLC) with the claimed "central data manager" for microDATA and TCS respectively. Dkt. No. 91, Ex. F at ¶¶ 198, 316-319. Contrary to Plaintiff's argument that "central data manager" is but an internal server with database, both NCC and CLC are integrated call-dispatching systems containing not only internal servers but also various other components. *Id.* at ¶¶ 196, 318. More importantly, Dr. Williams opines that incoming calls are delivered to NCC from the Public Switched Telephone Network ("PSTN"), located outside the accused system, *id.* at ¶ 200, and that such calls are delivered to CLC from a legacy circuit switched network, again located outside the accused system. *Id.* ¶ 318. Nowhere did Dr. Williams testify that incoming calls are delivered from an internal gateway component to the identified "central data manager," i.e., NCC or CLC, as Plaintiff now argues. Thus, Plaintiff's contention that the "presenting" step is satisfied by having an internal gateway component deliver the incoming call to an internal server is wholly unsupported by, if not contradictory to, its own infringement expert's opinion. The argument therefore must fail.

In sum, not only does Plaintiff's proposed construction of "presenting [an incoming call]" contradict the intrinsic evidence, Plaintiff's purported theory of how the accused systems perform the "presenting" step of claim 3 is also at odds with its own infringement expert's opinion. Even with all reasonable inferences drawn in favor of the non-moving Plaintiff, the Court finds that no reasonable jury could conclude that the accused systems directly perform the "presenting" step of

9

claim 3.  Accordingly, the Court deems it proper to **GRANT** summary judgment of non-infringement with respect to Plaintiff's claim for direct infringement of claim 3.[1]  *See Identix*, 149 F.3d at 1349 ("An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied.").

### d. Whether Defendants Induce or Contribute to the Performance of the "Presenting" Step of Claim 3

Plaintiff next argues that even if Defendants did not themselves perform the "presenting" step of claim 3, they have actively induced or contributed to the infringement of such step. Specifically, Plaintiff contends that Defendants induced communication service providers to deliver emergency calls to the accused infringing systems, or contributed to such infringing act.

Active inducement of infringement occurs when Defendants (1) knew of the patent in suit (2) performed some of the steps of the asserted claim; (3) induced others to perform any remaining steps of that claim; and (4) such other parties in fact performed such steps.  *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1318 (Fed. Cir. 2012).  Defendants induce others if they cause, urge, encourage, aid, advise, or otherwise induce them to perform the remaining steps of the claim, knowing that the result constitutes infringement.  *Id.* at 1307-08; *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).  "Inducement requires that the alleged

---

[1] Dr. Williams made a passing comment in his report that the "presenting" step is also directly infringed by "the *joint actions* of TCS and that other party."  Dkt. No. 91, Ex. F at ¶ 320.  Plaintiff, however, has not presented any argument in its summary judgment briefing supporting a direct infringement claim based on divided infringement theory, even though Defendants explicitly disputes such claim, arguing that there exists no agency relationship between Defendants and "that other party."  *See* Dkt. No. 91 at 17-18, 20; *See Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) ("[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed *only if* one party exercises control or direction over the entire process such that every step is attributable to the controlling party.") (emphasis added).  Plaintiff's alternative infringement theory, in case the Court finds that Defendants have not itself performed the "presenting" step of claim 3, focuses on indirect infringement, both inducement and contributory infringement.  Dkt. No. 104 at 19-24; Dkt. No. 114 at 5. Thus, having presented no argument on divided infringement in response to Defendants' explicit dispute about such claim, Plaintiff has either conceded that divided infringement of claim 3 is unsupported, or has waived such claim altogether.

infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Akamai*, 692 F.3d at 1308.

An accused infringer is liable for contributory infringement if it "offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008).

Defendants contend that they did not induce or contribute to the infringement of the "presenting" step, because communication service providers "have been transporting 9-1-1 calls to their dialed destinations for decades on their own, without any encouragement or aid" from Defendants. The Court disagrees. At issue is not whether communication service providers have been transporting 9-1-1 calls in general without Defendants' involvement. Rather, the issue is whether these service providers have been transporting or presenting 9-1-1 calls *to Defendants' accused system*s with aid or contribution from Defendants. Thus, that service providers were already transporting 9-1-1 calls to their dialed destinations before Defendants companies came into existence is no proof of whether Defendants induced these providers to perform the "presenting" step of claim 3 or contributed to such infringing act.

On the other hand, Plaintiff has presented Defendants' 30(b)(6) witness Thomas Ginter's testimony that Defendants received the infringement notice in November, 2010 with a copy of the '858 Patent attached, establishing Defendants' knowledge of the patent in suit at least since that

11

date.  (Dkt. No. 104-6 at 19:4-16; Dkt. No. 104-9.)   Further, Plaintiff has presented evidence that Defendant TCS contracted with Iowa Wireless Service Providers sometime in 2011 for providing TCS's Gemini System.  In its Statement of Work for the Iowa project, TCS promised to work with these service providers to implement proper connectivity between the service provider network and TCS's Gemini System.  *See* Dkt. No. 104 at 21.  TCS also stated that, under the contract, it would provide resources to support troubleshooting and resolution assistance to the service providers.  *Id.* n.105.  Plaintiff additionally points out that Defendant microDATA also contracted under similar terms, where microDATA promised to cooperate with Telephone Service Providers to establish proper connectivity between the service provider network and microDATA's system.  *See* Dkt. No. 104 at 22-23.

Having considered the purported evidence from both parties and "draw[n] all reasonable inferences in favor of the non-moving party," here Cassidian, *Anderson*, 477 U.S. at 255, the Court finds that Plaintiff has presented a genuine dispute of material fact as to whether Defendants induced communication service providers to perform the "presenting" step of claim 3 or contributed to such infringing act.  Thus, summary judgment of non-infringement is improper with respect to Plaintiff's claim for indirect infringement of claim 3.  Accordingly, the Court hereby **DENIES** Defendants' motion for summary judgment of non-infringement with respect to Plaintiff's claim for indirect infringement of claim 3.

### e. Whether Each of Incoming Calls is Associated With ANI and ALI Either Literally or Under the Doctrine of Equivalents

Independent claim 1 is an apparatus claim directing at an "emergency services communication systems…wherein *each of said incoming calls* is associated with Automated Number Information ("ANI") and Automatic Location Information ("ALI")…"  Defendants

argue that the accused systems do not literally infringe claim 1 because not each incoming call to the systems is associated with an ANI and an ALI.  Specifically, Defendants claim that only calls originated from landline telephones are associated with ANI and ALI, whereas wireless and IP-based calls are not associated with both ANI and ALI.  Defendants further argue that the types of information associated with wireless or IP-based calls are not equivalent to ANI and ALI.

Plaintiff does not dispute that only landline calls are literally associated with both ANI and ALI while wireless and IP-based calls are not.  Rather, Plaintiff argues that claim 1 is literally infringed when the accused systems receive incoming landline calls, each of which is associated with an ANI and an ALI.  For non-landline calls, Plaintiff's expert identifies pseudo-ANI associated with wireless calls as the equivalent to ANI, and Defendants' own documents suggest that ALI equivalent information can be derived from such ANI equivalent.  Dkt. No. 104 at 27-28.

The parties appear to disagree as to whether the "each of" limitation of claim 1 requires *all* incoming calls to the accused systems to be associated with both ANI and ALI.  The Court has previously construed the term "each of" to be given its plain and ordinary meaning, and in doing so has rejected Defendants' proposed construction of "each one of individually."  *See* Dkt. No. 71 at 12.  Here, neither party argues for the need to re-construe "each of."  The Court likewise does not find good cause to do so.  Under the plain and ordinary meaning of the term "each of," however, and "drawing all reasonable inferences in favor of the non-moving party," here Plaintiff, the Court finds that a genuine dispute of material fact exists as to whether "each of said incoming calls" to the accused systems is associated with ANI and ALI, literally or under the doctrine of equivalents.  Accordingly, the Court hereby **DENIES** Defendants' motion for summary judgment of non-infringement on the ground that the accused systems do not satisfy the claim limitation of

13

"each of said incoming calls is associated with Automated Number Information ("ANI") and Automatic Location Information ("ALI")…."

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS-IN-PART** Defendants' Motion for Summary Judgment of Non-infringement and finds that Defendants do not directly infringe claim 3 of the '858 Patent.   All other aspects of Defendants' Motion are hereby **DENIED.**

**So ORDERED and SIGNED this 10th day of December, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE